INGRAHAM, J.
The Southern National Bank presented a claim against the receiver of the American Steam Boiler Insurance Company, who was appointed receiver of such corporation in an action brought by the people to dissolve the corporation, which claim the said receiver disputed. Thereupon the claimant and receiver agreed to refer the question as to the validity of the •claim to a referee, under the provisions of the statute applicable to trustees of insolvent debtors, which statute is made expressly applicable to claims against receivers by section 2429 of the Code. ‘The provision of the Revised Statutes under which this receiver was appointed provides that, “if any controversy shall arise between the trustees and any other person in the settlement of any demand against such debtor, . * * * the same may be referred to one or more indifferent persons, who may be agreed upon by the trustees and the party with whom such controversy shall exist by a writing to that effect signed by them.” 2 Rev. St. p. 45, § 19. Such a writing was signed by the attorney ’for the claimant and by the attorney for the receiver. The statute further provides “that such certificate or the written agreement of the parties shall be filed by the trustees in the office of the clerk of the supreme court, * * * and q rule shall thereupon be entered by such clerk in vacation or in term appointing the persons so selected to determine the controversy.” Id. § 23. This agreement in writing to refer having been filed in the office of.the clerk of the supreme court, an order was entered by such clerk, under direction of a justice of the supreme court, appointing the person selected to determine the controversy; and this *828 motion to vacate is based upon an allegation that a copy of the application for such order, or a copy of the order itself, was not served upon the attorney general, under the provisions of section 8 of chapter 378 of the Laws of 1883.
No objection was taken to this proceeding before the referee,, but the moving parties, namely, certain stockholders, who were allowed to intervene, proceeded before the referee. The question was fully tried before him, and no objection was taken until his report had been filed and a motion had been noticed for its confirmation. Under such circumstances, to entitle the court to set aside the report on the ground that the order was void under the provisions of the act of 1883, known as the “ Haggerty Act,” clear evidence should be required that notice of the application-for the order of reference, or a copy of the order, had not been served upon the attorney general. The motion papers did not furnish such evidence. No notice to the attorney general is recited in the order, but that is not evidence that he did not receive notice. The only other evidence was an affidavit of one Maddox, who says that he was informed by an assistant to the attorney general that no notice was served on the attorney general. This, clearly, is not evidence of the fact. In the first place, it is merely evidence that an unverified statement was made by an assistant to the attorney general; and, if verified, it would not show that tho attorney general did not have notice. As, however, the motion seems to have been submitted and decided upon the assumption that no such notice was actually served, we will not rest our decision upon this absence of competent evidence.
Section 8 of the Haggerty act provides that “a copy of all motions and all motion papers, and a copy of any other application-to the court, together with a copy of the order or judgment to be proposed thereon to the court, in any action or proceeding now pending for the dissolution of a corporation or a distribution of its assets, or which shall hereafter be commenced for such purposes, shall in all cases be served on the attorney general.” We-agree with the court below that this was not a motion or an application to the court in an action or proceeding for the dissolution of the corporation or the distribution of its assets, within the provisions of this section. Under the provisions of the statute, a special proceeding seems to be authorized for the purpose of determining questions of the validity of claims against a corporation which has been dissolved, and the assets of which are in the hands, of a receiver, so as to determine whether or not the claimant- is entitled to participate in a distribution of the property of the corporation in the hands of the receiver. The reference in such a case is simply to determine the controversy between the receiver and the claimant as to the validity of the.claim against the corporation. ■ If the claim is held to be valid, the statute provides, that the report of the referee shall be filed in the office where the rule for his appointment was entered, and shall be conclusive on the rights of the parties, unless set aside by the court. The order of reference is to be entered by the clerk, as a matter of course, upon the filing of a stipulation or agreement to refer. No ap *829 plication to the court is necessaiy for such order, and the mere ¡fact that a justice of the supreme court did direct its entry was entirely immaterial. The order did not, either actually or in effect, distribute the assets of the corporation. It simply provided, as a preliminary to such distribution, a tribunal which 'was to determine as to the validity of the demand ; and, that having been '•determined, application to the court was necessary for the proper !order to be entered upon such report.
It might well be, under this statute, that before a final order or ¡judgment should be entered against the receiver, which would affect the distribution of the property in the hands of the receiver, «lotice should be given-to the attorney general. It is not necessary to determine this point, because notice of such final judgment and a copy of such judgment or order were served upon the attorney general, who interposed no objection to it; and any irregularity in the granting of the order of reference was thereby waived. We also think that this moving party waived whatever ■right he had to object to the confirmation of the report, or to ■make a motion to set it aside on this ground, by proceeding before a referee; and submitting himself to his jurisdiction, without objection until the case had been fully decided. He should have objected to proceeding before the referee, or made a motion to set aside the order of reference before proceeding before the referee. He could not go on before the referee, take his chances of obtaining a favorable result, and then, when defeated, claim that the .proceeding was void because of a failure to give notice to the attorney general, when the failure to give such notice had no effect upon the interests of the moving party. The right of the attorney general to insist upon such objection is not presented. Whatever right he had was wavied by his failing to object to the entry of the final order.
The other question presented on the motion can be more properly considered on the appeal from the judgment or order entered -confirming the report of the referee and the order directing the payment of the amount reported due by the referee. The appeal from this judgment and order bring up for review the question as to whether or not the respondent had a valid demand against the corporation of which the appellant is the receiver. It is conceded that, if this note of May 2, 1893, for $21,000, was a valid obligation in the hands of Beecher, Schenck & Co., its transfer by the payees to the Southern Hational Bank cannot be questioned by the receiver. It appeared before the referee, and was conceded by the appellant on this appeal, that on May 2, 1893, the American Steam Boiler Insurance Company was indebted to the Chatham national Bank in a sum exceeding $21,000. On May 2, 1893, W. E. Midgley, who was the vice president of the American Steam Boiler Insurance Company, received a-check of Beecher, Schenck & Co., drawn to his individual order, for $21,000, and on the same day deposited that check in the Chatham national Bank to the account of the American Steam Boiler Company, where such corporation had an account That deposit was credited upon the pass book of the American Steam Boiler Insurance *830 Company with the bank, and this amount was entered upon the; books of that corporation as a demand loan to .it by Beecher,. Sehenck & Co. Subsequently, but when, does -not appear, the American, Steam Boiler Company made its promissory note, dated. May 2, 1893, by which it promised to pay, on demand, to Bepcher,. Sehenck & Co. or order, $21,000, reciting that there had been deposited as collateral security for the payment of that note certain •securities therein named. This note was signed by the president, and assistant secretary of the American Steam Boiler Company, and it is for the balance due upon such note that this demand was, made. We think that the referee was clearly right in holding that this constituted a valid demand against the corporation, and that the corporation was liable to the holder of this note for dis-balance due. It is, as before stated, undisputed, that the vice-, president of the corporation received to his order a. check for $21,-000, that he deposited that check in the bank to the credit of the? corporation, and that subsequently a demand note the amount that he had received was given by the officers of the corporation. The money thus went into the hands of the corporation, was used by the corporation for its own purposes, and thus was constituted a valid obligation of the corporation; and the execution of the-demand note was a simple recognition by the corporation of its-obligation to repay the amount that it received. The.disposition made of this money by the-officers of the corporation was entirely immaterial. It received the money, and. subsequently gave its obligation to repay it; and neither-the corporation making the loan,, nor the bank to whom the obligation to repay the loan was transferred, is responsible for the application made by the corporation of the money that it had -received as the consideration for the note-The evidence is conclusive that this note was executed prior to-the appointment of the receiver of the ..American Steam Boiler Company; and the entry on'the books-of Beecher, Schenck.& Co. as to this loan of $21,000 is not sufficient to overcome the presumption that attaches to the receipt by the American Steam Boiler-Company of the money and its giving this obligation to repay the same.
We deem it entirely unnecessary to consider the relations between the Chatham National 'Bank and the American Steam. Boiler Insurance Company prior to May 2, 1893, when this check was given. It is clear that at that time a debt was.owing by the-American Steam Boiler Company to the Chatham National Bank of upward of $21,000. As between the corporation and the bank there is nothing to show but that that was a valid and subsisting-claim against the corporation in favor of the bank. We assume-that it also appears that this check of Beecher, Sehenck & Go. for $21,000 was paid to the'bank on account of'that indedtedness. And we think it clear that that created a valid obligation on the-part of the steam boiler company to Beecher, Sehenck & Co. to-repay that snm of -money. There is not the-slightest evidence to-substantiate a claim that this money was received in any form than as a loan by Beecher, Sehenck & Co. to the steam boiler-company, unless it may be said that some inference may be drawn, *831 .from the entries in the books of Beecher, Schenck & Go.; but these-are entirely insufficient to overcome the case made out by the-'claimant showing a payment to the steam boiler company o£ ’§21,000, and its appropriation of that sum, followed by a note ■signed by the officers of the company, by which it agrees to repay the same that it had received.
It is unnecessary to discuss the question as to the power of the president and secretary to execute a note of the corporation. The corporation was an insurance company. It had to borrow money and there is nothing in its by-laws to restrain its officers, when it borrowed money, from giving the usual obligations acknowledging the liability to repay the money borrowed; and we thinlc ■without further discussing the subject, that, as to third parties, a •note given under such circumstances was a valid and subsisting; obligation of the corporation, and that the referee properly so-held.
The order and judgment should be affirmed, with costs.
All concur.