(98 App. Div. 97)

EUSTACE et al. v. NEW YORK BLDG. LOAN BANKING CO. et al.

(Supreme Court, Appellate Division, First Department.   November 25, 1904.)

1. RECEIVERSHIPS—ORDER OF REFERENCE—FAILURE TO GIVE NOTICE TO ATTOR-
NEY GENERAL.

Laws 1883, p. 559, c. 378, § 8, provides that a copy of all motions and
of any other application to the court, together with a copy of the order
to be proposed thereon, in any proceedings for the dissolution of a cor-
poration or a distribution of its assets, shall be served on the Attorney
General.   After rejection of a claim against a corporation in the hands
of a receiver the claim was referred to a referee to hear and deter-
mine the matter.   The statute provides that the report of a referee in
such a proceeding shall be conclusive as to the rights of the parties unless
set aside by the court.   *Held*, that the Attorney General should have had
notice of the application for reference.

Appeal from Special Term, New York County.

In the matter of the claim of Alexander C. Eustace and another
against the New York Building Loan Banking Company and Charles
M. Preston, as receiver thereof.   Appeal by the Attorney General from
an order denying a motion to vacate an order of reference.   Order
reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN,
PATTERSON, and O'BRIEN, JJ.

Cornelius F. Collins, for the Attorney General.

J. P. Eustace, for respondents.

PER CURIAM.   On the 24th of February, 1904, in an action insti-
tuted by the people of the state of New York against the New York
Building Loan Banking Company for its dissolution, one Charles M.
Preston was appointed a permanent receiver, and on the 3d of March
following the firm of J. P. & A. C. Eustace presented a claim to the re-
ceiver for professional services rendered to and disbursements made
for such corporation, amounting to $97,500.   The receiver rejected the
claim, and offered to refer the same to some competent person to hear
and determine.   Subsequently the claimants and the receiver entered
into an agreement which, after reciting the fact that the claim had
been presented to the receiver and rejected, stipulated that the matter
be referred to Hamilton Odell, Esq., a counselor at law of the city of
New York, as sole referee, to hear and determine the matter in contro-
versy.   On April 27, 1904, an order was made, without notice to the
Attorney General, approving this agreement and appointing the person
named as referee.   On the 2d of May, 1904, the Attorney General
obtained an order to show cause, returnable on the 6th of May, why
the above order of reference should not be vacated and set aside, and
for such other and further relief as to the court should seem just.   It
was claimed by the Attorney General that he was entitled to notice of
the application for the order of reference under section 8 of chapter 378,
p. 559, of the Laws of 1883, known as the "Haggerty Act."   The sec-
tion provides that:

"A copy of all motions and all motion papers, and a copy of any other ap-
plication to the court, together with a copy of the order or judgment to be

proposed thereon to the court in any action or proceeding now pending for the dissolution of a· corporation or a distribution of its assets, or which shall hereafter be commenced for such purpose, shall, in all cases, be served on the Attorney General."

This motion was denied, and from the order thereupon entered this appeal is taken.

The court below undoubtedly based its decision upon the opinion which was handed down by this court in the case of the People v. American Steam Boiler Ins. Co., 3 App. Div. 504, 38 N. Y. Supp. 406, in which the learned judge writing the opinion discussed the question as to whether the Attorney General was entitled to notice, and held that such notice was not required, and in this opinion the court apparently concurred. It will be seen, however, on an examination of that case, that the question involved in the case at bar did not necessarily arise in the case of the People v. The American Steam Boiler Co. In that case a party who had consented to a reference, and had participated in it, when beaten sought to relieve himself of the adverse decision by claiming that the Attorney General should have had notice; and the court held that it was too late for him to raise the question, the Attorney General making no complaint. This was all that was authoritatively decided, and all that was necessary to be decided, by that case. It is true, as already stated, that the judge who wrote the opinion proceeded to discuss the question now involved, and expressed his opinion upon the subject. It is true that the other members of the court appear to have concurred in the opinion; but such concurrence by no means involved an adoption of all that was said in the opinion, as it appears upon the face of the opinion that it was decided upon another ground. Such an enunciation of the law is of no weight in this case, as the question now presented was not properly before the court in that case, and what was said about it was entirely obiter. That such a decision has no binding force was recently announced by the Court of Appeals in the case of Crane v. Bennett, 177 N. Y. 106, 69 N. E. 274. In that case the court say:

"It was not our intention to decide any case but the one before us, * * * and our opinion should be read in the light of that purpose. If as sometimes happens, broader statements were made, by way of argument or otherwise, than were essential to the decision of the questions presented, they are the dicta of the writer of the opinion, and not the decision of the court. A judicial opinion, like evidence, is only binding so far as it is relevant, and when it wanders from the point at issue it no longer has force as an official utterance. Stokes v. Stokes, 155 N. Y. 581, 594, 50 N. E. 342; Roberson v. Rochester Folding Box Co., 171 N. Y. 538, 551, 64 N. E. 442, 59 L. R. A. 478, 89 Am. St. Rep. 829. It cannot be reasonably expected that every word, phrase, or sentence contained in a judicial opinion will be so perfect and complete in comprehension and limitation that it may not be improperly employed by wresting it from its surroundings, disregarding its context and the change of facts to which it is sought to be applied, as nothing short of an infinite mind could possibly accomplish such a result. Therefore, in applying cases which have been decided, what may have been said in an opinion should be confined to and limited by the facts of the case under consideration when the expressions relied upon were made, and should not be extended to cases where the facts are essentially different. When this rule is followed, much of· the apprehension and uncertainty that often arises as to the effect of a decision will be practically avoided."

90 N.Y.S.—50

This necessarily brings us to a brief consideration of the question as to whether applications of this description come within the purview of the act cited. It may be that they do not come strictly within the letter of the act, but they certainly are embraced within its spirit. The statute provides that the report of the referee in a proceeding of this character shall be filed in the office where the order for his appointment is entered, and shall be conclusive as to the rights of the parties, unless set aside by the court. This proceeding, resulting in a conclusive judgment as between the parties, would make it an idle ceremony to require notice to be given to the Attorney General when application was made for the distribution of the assets of the corporation towards the payment of these claims only after they had been conclusively established. He would then be tied hand and foot by the judgment, and no method whatever is suggested by which he might be able to sift the merits of the claim, as he could have done if he had had notice and could have appeared before the referee. It seems to us that the establishment of claims against the estate is a very important step in a proceeding for the distribution of the assets amongst the persons entitled thereto. We think, under these circumstances, that the Attorney General should have had notice of this application, and that the motion to set aside the order of reference should have been granted.

The order should be reversed, with $10 costs and disbursements, and the motion to set aside the order of reference granted, without costs.