## PEOPLE v. FEDERAL BANK OF NEW YORK.

### In re SELMA NAT. BANK.

(Supreme Court, Appellate Division, First Department. December 13, 1907.)

1. CORPORATIONS—DISSOLUTION—CLAIMS—DEDUCTIONS.

The president of a bank, without authority, deposited the bank's money in another bank, for which a receiver was later appointed. To cover the loss arising from the unauthorized deposit, the president gave his bank a note, with the understanding that he was not to become liable thereon in excess of the loss actually sustained. *Held*, that the taking of the note did not operate to reduce the claim by the amount of the note.

2. SAME—DISPUTED CLAIMS—DETERMINATION OF REFEREE—REVIEW BY CLAIMANT.

Laws 1902, pp. 115, 116, c. 60, relating to proceedings for the dissolution of corporations, provides in section 5 for the appointment of a referee to hear and determine disputed claims. Section 6 provides for a final accounting by a receiver. Section 8 requires the receiver to file his account and to serve a duplicate thereof on the Attorney General, who is authorized to serve objections thereto, and further requires the receiver to mail to each creditor within 10 days after filing the account notice of the time and place of presentation of the account to the court. It further provides that, unless objections are made to the items of the account by a creditor or on behalf of the Attorney General, no referee shall be appointed to pass thereon, but the same shall be examined and settled by the court. In proceedings for the dissolution of a bank, a referee was appointed to determine disputed claims. Claimant had no opportunity to review the determination of the referee rejecting its claim, as its attorney had no notice thereof until after the application for the approval of the receiver's account had been made, or of the filing of the account until after the order of approval was made, although its attorney had served notice of general appearance on the receiver's attorneys. *Held*, that it was the duty of the receiver to bring the matter to the attention of the court, so that a final order of distribution should not be made until the validity of the claim was finally decided.

3. SAME.

Under said sections the determination of the referee was not final, nor was the claimant concluded by the order approving the receiver's accounts.

4. SAME—EXCEPTIONS TO REFEREE'S REPORT—PRACTICE.

Supreme Court Rule 30, relating to the filing of exceptions to referee's reports, provides that in references other than for the trial of issues in an action, etc., the report shall become absolute and stand in all things confirmed, unless exceptions thereto are filed and served within eight days after service of notice of filing of the same. *Held* that, in proceedings for the dissolution of a corporation, a claimant whose claim was rejected by the referee appointed to determine disputed claims followed the proper practice in filing exceptions to the referee's report, and bringing the same to a hearing at Special Term.

Appeal from Special Term.

Action by the people for the dissolution of the charter of the Federal National Bank. From an order overruling its exceptions to the determination of a referee as to disputed claims, and denying its motion to have its exceptions allowed and to have the report of the referee set aside, the Selma National Bank appeals. Reversed.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and HOUGHTON, JJ.

Francis C. Caffey, for appellant.
George W. Glaze, for respondent.

LAUGHLIN, J. This action was brought by the Attorney General for the dissolution of the charter of the Federal National Bank of New York, a domestic banking corporation. Pending the action the respondent, Lee Schlisinger, was appointed temporary receiver, and by the judgment of dissolution he was made permanent receiver in December, 1904. Pursuant to the receiver's notice, duly given, for the presentation of claims, the appellant duly filed with him on the 2d day of May, 1905, proof of claim for a balance of money on deposit on April 14, 1904, the date upon which the Federal Bank suspended payment, of $7,271.14, and by an indorsement thereon receipted for a dividend of 20 per cent. paid by the temporary receiver, making the balance claimed $5,816.92. The receiver disputed the claim, and on the 14th day of September, 1905, procured the appointment of a referee pursuant to the provisions of section 5, c. 60, p. 115, Laws 1902, to hear and determine this and other disputed claims. Upon the hearing before the referee the claim was proved as filed, but the Attorney General and the receiver contended that it should be reduced by the sum of $3,000 on account of the fact that the Selma National Bank had taken and withheld a note given by one John Carraway, president of that bank, to cover the loss which it was estimated, in a settlement between the Selma National Bank and its president, would be sustained on account of its money having been deposited by him without authority in the Federal Bank; it having been expected at the time of such settlement that the Selma Bank would receive on account of its claim against the receiver about 60 per cent. thereof. This contention was successful before the referee, who decided that, on account of receiving the note of its president for this anticipated loss, the claim of the Selma National Bank against the receiver should be reduced by $3,000, and that it had therefore received on the 20 per cent. dividend on the entire claim $600, more than 20 per cent. of its claim as thus reduced, and he accordingly decided that it should refund to the receiver the $600, or that the same should be credited upon subsequent dividends. The learned referee in an exhaustive opinion carefully reviews the authorities upon the question as to the effect of the payment by one party of another party's indebtedness; but we are of opinion that that question is not presented by the facts with respect to this claim. The president of the claimant did not pay, or intend to pay, any part of the indebtedness of the Federal Bank to his bank. There is no question but that the Federal Bank received the money belonging to the Selma National Bank, and gave it credit therefor. It understood that the deposit was made by the Selma National Bank, and the money deposited came directly from the funds of the latter. The liability of the Federal Bank, therefore, to the Selma National Bank, was primary and direct. It did not concern and does not concern the Federal Bank, which thus received the funds of the Selma National Bank, that the latter had a claim on account of this transaction against its president for making the deposit without authority. The Selma National Bank called its president to account,

and in the adjustment of his liability to it for his negligent or unauthorized acts it was anticipated that it would sustain a total loss of about 40 per cent. of this deposit, making approximately $3,000, and this amount was included in the note given by Carraway to his bank in settlement of its claim against him. The note, however, has not been paid. It appears by the evidence that it was expressly understood when it was given that he was not to become liable thereon in excess of the loss actually sustained by the Selma National Bank on its claim against the Federal Bank. If the note had been paid and the assets of the Federal Bank were sufficient to pay more than 60 per cent. of the claim of the Selma National Bank, that would not relieve the Federal Bank from its liability for the 40 per cent. balance; and the only question that could arise would be as to whether the claim could be enforced by the Selma National Bank, as trustee for Carraway, or whether Carraway himself would be deemed subrogated to the claim to that extent and be obliged to prosecute it in his own name, but that question does not arise upon this record, for the undisputed evidence shows that it would be the duty of the claimant to apply any amount it receives upon its claim against the receiver of the Federal Bank in excess of 60 per cent. in reduction of Carraway's note. Payment in the circumstances to the Selma National Bank will release the liability of the receiver from any claim by Carraway, and, in view of the fact that Carraway has made no claim against the Federal Bank, it is difficult to understand any theory upon which the receiver of the Federal Bank is concerned with the claim of the Selma National Bank against its president upon a secondary liability for this claim.

The learned counsel for the respondent further contends that the appellant is concluded by an order for distribution of the funds on hand by the receiver made upon an accounting by the receiver pursuant to the provisions of sections 6, 8, c. 60, pp. 115, 116, Laws 1902. The determination of the referee was filed on the 31st day of July, 1906, and a copy thereof served upon the attorney for the appellant on the 10th day of October, 1906, prior to which time he had no notice of the determination. It appears by affidavit of the attorney for the respondent that on the 18th day of June, 1906, an order was made by the Supreme Court, requiring the receiver to file an account of his proceedings; that pursuant thereto, he filed an account on the 6th day of August, 1906, in which he set forth, among other things, the claim of the appellant, and that it had been disputed by him and referred to the referee, and the determination of the referee thereon; that within 10 days thereafter notice was given to the appellant by mail of the filing of said account and of the service thereof upon the Attorney General, and that the same would be presented to the court "for passage and settlement, and for instructions relative to the disposition of the balance in the hands of the receiver," on the 6th day of September, 1906; that on the return of that motion the appellant failed to appear, and thereafter an order was made and entered on the 26th day of November, 1906, "passing, settling, ratifying, and confirming said accounts in all respects as filed, including the action had with respect to the Selma National Bank." That order has not been vacated nor has

any appeal been taken therefrom. This is the order which it is claimed is binding upon the appellant, and concludes it from reviewing the determination of the referee. It appears by affidavit of the attorney for the appellant that he appeared for the appellant generally in this proceeding on the 1st day of September, 1905, and served a notice of appearance on the attorneys for the receiver and on the Attorney General, and demanded that a copy of all papers and a notice of all proceedings be served upon him, but that he received no notice of the order requiring the receiver to account or of the filing of the receiver's account, or of an application for the allowance thereof, and had no knowledge thereof until the 13th day of December, 1906, when the affidavit of the attorney for the respondent, setting forth these facts, was submitted to the court on the hearing on appellant's exceptions to the referee's determination of the disputed claim.

Neither the proceedings or the accounting, nor the order of the court therein, nor the notices of appearance, are in the record. The respondent contends that the appearance was not an appearance in the action, which was brought for the dissolution of the corporation, and that it did not make the appellant a party thereto, but that it was merely an appearance in the proceeding with respect to the disputed claim. The theory of the learned counsel for the respondent is that the proceedings with respect to the receiver's accounting were in the action, and that, upon the accounting, the appearance for the appellant was properly ignored, and notice was only required to be given in accordance with section 8, c. 60, p. 116, Laws 1902, which provides for giving notice by mail to creditors. Section 6 of said act provides for a final accounting by a receiver upon his own motion or upon order of the court on application of the Attorney General or of a creditor or interested party. The accounting having been made pursuant to an order of the court, it may be assumed, although it does not definitely appear, that it was not a voluntary accounting; and yet, since the statute authorizes the court to require the receiver to file an intermediate account, it does not clearly appear that it was an order for a final accounting. Section 8 of the act requires the receiver, among other things, to file his account, and to serve a duplicate thereof upon the Attorney General, who is authorized to serve objections thereto, and requires the receiver to mail to each creditor within 10 days after filing the account notice of the time and place of presentation of the account to the court. The section further provides that, unless objections are made to the items of the account by a creditor or on behalf of the attorney general, no referee shall be appointed to pass thereon, but the same shall be examined and settled by the court, and that, in case objection is made, a referee may be appointed "to take the testimony and report the same to the court." At the time the order for the accounting was made the reference of the appellant's claim was pending; but before the account was filed the determination of the referee had been filed. The appellant, however, had no opportunity to review the determination of the referee, as its attorney had no notice of the determination of the referee until after the application for the approval of the receiver's accounts had been made or of the filing of the

receiver's account until after the order approving the same was made. The order of reference on the claim of the appellant, which was disputed by the receiver, was made pursuant to the provisions of section 5 of said act, which made it the duty of the receiver to apply to the court, upon notice to parties whose claims he rejected, "for the appointment of a referee to hear and determine as to the allowance thereof."

If it were intended by the Legislature that the court on a proceeding for an accounting by the receiver should review the determination of a referee with respect to a disputed claim, or pass upon claims disputed by the receiver and pending undetermined before a referee, or, in other words, that all references should be superseded by the accounting proceedings, then it is clear that the notice of appearance by the appellant required that notice of the application for the approval of the accounts of the receiver be given to its attorney, which was not done. If the order for the accounting did not supersede all references of disputed claims, the court on the accounting could not review these determinations of the referee. Then the order of the court approving the accounts of the receiver should not conclude the appellant. The receiver and his attorneys knew that the appellant was asserting the claim before the referee, that it had not been given notice of his determination, and had not been afforded an opportunity to review such determination. It was the duty of the receiver and of his attorneys in the circumstances to bring the matter to the attention of the court, to the end that a final order of distribution should not be made until the validity of the claim of the appellant was finally decided. It does not clearly appear that the order made was a final order of distribution, nor does it appear that distribution has been made thereunder. It does not appear that any order has been entered confirming the determination of the referee or that any judgment has been entered thereon. The appellant followed the practice prescribed by rule 30 of the general rules of practice, and filed exceptions to the report of the referee within eight days after service of notice of filing the same, and thereafter duly brought his exceptions to a hearing at Special Term, and has taken an appeal from the order overruling the same. The receiver does not object to the hearing of the merits on the appeal from the order overruling the exceptions upon the theory that no appeal lies from this order and that appellant's remedy is to appeal from an order confirming the report of the referee or from a judgment to be entered upon the determination of the referee.

As already observed, it does not appear that any such order or judgment has been entered or that the receiver contemplates entering the same. The objections are that the determination of the referee is final and also that the appellant is concluded by the order approving the accounts of the receiver. If the Legislature intended that the determination of the referee should be final with respect to all rejected claims, that would be such a new and unusual departure that we would expect to find in the act language clearly expressing such intent. We find nothing in the statute to indicate that the Legislature intended to deprive claimants of the right to have the rejection of their claims by the referee reviewed by the court or of the receiver to

have claims allowed over his objection reviewed by the court. We are therefore of the opinion that the right to review the determination of the referee by either party continued as before the act of 1902 and that the practice followed by the appellant in filing exceptions to the report of the referee and bringing the same to a hearing at the Special Term was proper and in accordance with the decision of this court in People v. American Loan & Trust Co., 87 App. Div. 139, 84 N. Y. Supp. 114, 69 N. E. 429; Id., modified 177 N. Y. 231, 469, 69 N. E. 1105, which upon that point I do not understand to have been affected by the reversal in the Court of Appeals. This court has held that such a determination of a referee under the act of 1902 is final and conclusive, unless set aside by the court. Matter of Eustace v. N. Y. Building Loan Co., 98 App. Div. 97, 90 N. Y. Supp. 784. See, also, Austin v. Rawdon, 42 N. Y. 155, and Del. Valle v. Navarro, 21 Abb. N. C. 136, and note. As the material facts are undisputed, there is no necessity of a further reference.

It follows that the order should be reversed, with $10 costs and disbursements, and the exceptions sustained and claim allowed in full, with costs at Special Term and costs of the hearing before the referee to appellant. All concur.